No. 63.—ROBERT CORRY, adm'r, &c. plaintiff in error, vs. NICHOLAS TOMPKINS, defendant in error.

[1.] It is not error in the Court to refuse to repeat a charge which it has already given.

In Equity, in Heard Superior Court. Tried before Judge O. WARNER, November Term, 1854.

Nicholas Tompkins filed his bill against Robert Corry, as the administrator of William J. Germany, alleging, that in 1839 he sold and conveyed to Germany certain lands and mills for $16,000, taking the notes of Germany and a mortgage on the premises; that about ten months thereafter, at the urgent solicitation of Germany, he re-purchased the property at $11,000, which was to be credited on Germany's notes; and to perfect titles, the mortgage was to be foreclosed and a sale made; that complainant went immediately into possession and has remained ever since; that in 1842, Germany died and Corry was appointed administrator on his estate; that Corry, as administrator, has commenced suits for the land, which are still pending; that the proceeding to foreclose the mortgage is also pending. The bill prayed an injunction and a specific performance.

The answer denied all knowledge of the re-sale, and held the complainant to strict proof; expressed the belief of the administrator, that Germany had made large payments on the notes, amounting to at least $6,000, and that when proper credits were given, there would not appear to be as much as $11,000 still due to Tompkins; and prayed, that if there was a specific performance, there also might be an accounting and a decree for Tompkins to pay to him any overplus of the $11,-000, after paying the balance due on the notes.

On the trial, evidence was introduced by complainant, to prove the re-sale as charged. There was also the evidence of one witness for defendant, that "his first understanding from

Corry, adm'r, vs. Tompkins.

the parties was, that Germany paid Tompkins $8,000 in lands,. which property he afterwards.saw in the possession and control of Tompkins." Counsel of defendant requested the Court to charge the Jury, "that they must look into the payments between the parties; and if they found that Tompkins was over-paid, they must decree the amount over-paid back to defendant, before they can give complainant a decree for specific performance." Which charge the Court refused to give, and this is assigned as error.

MORGAN, for plaintiff in error.

· B. H. HILL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

In October, 1837, Nicholas Tompkins sold to Wm. J. Germany a tract of land, for the sum of $16,000; and for the· purchase money he took Germany's notes, due as follows :— $3,000 due January 1, 1841; $3,000, due January 1, 1842; $3,000, due January 1, 1843, and $4,000, due January 1, 1844, besides $3,000, which was paid in cash. To secure the notes, he took a mortgage on the premises. In 1840, Germany re-sold the land to Tompkins, on the following terms, as stated by a witness, who took it down in writing at the time: " Tompkins was to take the land back at $11,000, in Germany's notes; and as Germany was involved, and these executions against him, Tompkins was not to take a deed from Germany, lest the land should be made subject to the executions;: but Tompkins was to foreclose the mortgage and have the land sold and bid it in, let it bring what it might. Germany was to. .have credit on the mortgage for $11,000, in the notes which Tompkins held on him, for the original purchase money; that Tompkins was owing Germany, on sundry accounts, about $1800, which was agreed to be placed as a credit on the last note due, which they called the large note, for $4,000, because they wanted the mortgage foreclosed on the notes which

fell due first, that it might be done as soon as possible; that the credit of $11,000 was not to be entered on the notes then, but when the mortgage was foreclosed; and there was to be no interest charged either way."

Under this contract, Germany gave immediate possession, to Tompkins, of the premises. This was the testimony of Josiah Jacobs, the witness who in the suit, hereinafter mentioned, testified as to the contract. Subsequently, Germany died; no farther steps having been taken in the matter; and in 1845, Corry, his administrator, brought his action of ejectment against Tompkins and his tenants, to recover back the premises. Tompkins filed his bill in Chancery, for injunction of the eject- ment suits, and for specific performance of the contract, as to the foreclosure of the mortgage, &c. The bill alleged, sub- stantially, the foregoing facts.

The answer of Corry set up the Statute of Frauds as a de- fence against the contract; and asserted, there were credits to which the notes were entitled. The testimony of the complain- ant has been stated, with the exception of some corroborating proof as to the agreement of re-sale. The defendant offered no evidence, and the Jury decreed a specific performance for foreclosure, upon the payment, by Tompkins, to the defendant, of $1348 61.

The complainant moved for a new trial, on the ground that the verdict was contrary to and without evidence; which mo- tion being refused, the Solicitor for the complainant excepted and brought up the case to this Court.

There not being a scintilla of proof to warrant the verdict, a new trial was awarded. The Jury, in the face of the facts as testified to by Jacobs, computed the interest on the $11,000 against Tompkins, from the time he went into possession of the land, in the fall of 1840, and deducted the notes of Germany, as credits or payments, as they severally fell due, and setting off one against the other, struck the balance; whereas, in truth, according to the evidence, there should have been a de- cree for Tompkins.

Germany was still owing Tompkins the three first instalments for the land, of $3,000 each, making $9,000, and $2,200 on the last or large note, as the parties called it, viz: $4,000, with a credit of $1800, making the whole amount of Germany's indebtedness to Tompkins, $11,200. From this sum deduct the $11,000 owing by Tompkins to Germany, on the re-purchase of the land, and it leaves a balance, in favor of Tompkins, of $200.

Consequently, this Court determined to send the case back, remarking, when it was before up, that " on the re-hearing, it would be competent for the defendant to offer proof of payments by his intestate, provided any were made. If this should be done, and the mortgage debt be found to be *over*-paid, Tompkins must discharge the amount before he would be entitled to a decree for the re-conveyance of the land."

Upon the last trial, the depositions of William Wilson were taken and read to the Jury, and was the only additional testimony which was not offered on the first trial. He swore, that he understood, from Germany and Tompkins, that Tompkins sold Germany his grist and saw-mill, together with six lots of land, for $16,000; that it was in the fall of 1839 or 1840; and witnesses's first understanding from the parties was, that Germany paid Tompkins $18,000, consisting of land, which property he afterwards saw in the possession or under the control of Tompkins."

The cause being closed, after argument, the Court charged the Jury, amongst other things, that they must be satisfied, from the evidence, of the existence of the mortgage and notes upon which it purported to be founded, at the time of the execution of the contract sought to be performed; *and that the amount of indebtedness appearing upon the notes, was unpaid at the time of the agreement set up, and prayed to be enforced.*"

Counsel for defendant requested the Court to charge, that before a decree for specific performance could be rendered, the Jury must look into the payments between the parties, and if they found that Germany had overpaid Tompkins, they must

decree the excess to Corry before the complainant was entitled to the relief which he asked."

This request the Court refused to charge, and Counsel for the defendant excepted.

Why Judge WARNER refused to give the charge as requested, does not appear. We apprehend it was for the reason, that he had already instructed the Jury, in substance, to the same effect. And in fact, the charge given was broader than that which was requested. It was, that unless the Jury found that there was at least $11,000 due and unpaid, in the Germany notes, at the time of the second contract, no decree of foreclosure could be rendered : whereas, by the charge, as asked, if the Jury found that the mortgage debt was overpaid by discharging the excess, the complainant would be entitled to a decree for specific performance. One thing is indisputable—the charge, as given, covered the issue—debarred the defendant of no right—shut out no testimony. It left the question of payment, as sworn to by the witness, Wilson, fully open to the consideration of the Jury. And if, after weighing it, the Jury had found that Germany did not owe Tompkins $11,000 upon the mortgage, a verdict for the defendant was inevitable.

The truth is, the Jury must have concluded that Mr. Wilson was mistaken. And it is not strange that they did. All the proof goes to show, that in addition to the lots of land of unascertained value, conveyed by Germany to Tompkins, $16,000 was the 'purchase money agreed to be paid for the land. That $3,000 was paid at the time, leaving a balance of $13,000 still due, for which the four notes of Germany were taken, that is, three for $3,000 each and one for $4,000. Would this have been done, if, instead of $3,000, as proven by Jacobs, $8,000 had been paid, as testified to by Wilson? The facts and figures are irreconcilable with this hypothesis, to say nothing of the unlikelihood that Tompkins should, at the time of the re-sale, have retained the notes of Germany, when these notes had been overpaid. That he should have kept possession of these notes, to the amount of $11,000, notwithstanding he owed Germany that sum, is natural enough ; for it was the

agreement that this should be done for the purposes of the fore-closure, to perfect the title.   That he should have held them with a small balance in his favor, after setting off the $11,000 due by him, is nothing improbable.   But that he should have kept them open for five thousand dollars more than was due, and which should have been deducted from the price of the land at the date of the first sale, would require the strongest proof to carry conviction to the Jury, in the face of the facts before them.